IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS MARBURY, JR., )
         Plaintiff, )
) Civil Action No. 09-300
) Electronically Filed
v. )
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL SECURITY, )
         Defendant. )

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Plaintiff, Thomas Marbury, Jr., ("Marbury") brings this action pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI respectively of the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f, §§ 401-434. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the reasons that follow, the decision of the Commissioner will be affirmed.

**II.    PROCEDURAL HISTORY**

Marbury protectively applied for SSI and DIB benefits on December 5, 2005. Record of Marbury v. Astrue ("R.") 15. Plaintiff initially asserted an onset date of December 31, 2001, but later amended the date to December 5, 2005. R. 656-57. Marbury's last date insured for DIB was December 31, 2006. R. 34.

The initial application was administratively denied and Marbury filed a timely response requesting an administrative hearing. On June 19, 2007, a hearing was held before Administrative Law Judge Douglas Cohen ("ALJ Cohen"). R. 646-657. Marbury, who was represented by counsel, appeared and testified. *Id.* On July 7, 2007, ALJ Cohen issued a determination that was partially favorable to Marbury, finding that there was a limited period

following his date last insured during which Marbury was disabled due to severe physical impairments that limited him to sedentary work. R. 42-46. ALJ Cohen found that Marbury's mental impairments were "non-severe". R. 41. In an Amended Decision dated August 20, 2007, ALJ Cohen clarified that since Marbury was determined to be disabled by physical impairments only after his last date insured for DIB, only SSI benefits would be available. R. 34.

Marbury appealed ALJ Cohen's decision to the Appeals Council contesting the onset date assigned to his physical disabilities. R. 72. The Appeals Council granted Marbury's request for review and vacated ALJ Cohen's decision. R. 69. This case was remanded as "it was not clear from the record, why the claimant was limited to sedentary work." R. 69.

On July 1, 2008, a hearing was held before ALJ William E. Kenworthy ("ALJ"). R. 642. Marbury was not present at the hearing due to a recent hospitalization. R. 642. Marbury's counsel appeared and in light of Marbury's recent testimony at the hearing before ALJ Cohen, the hearing proceeded without objection. R. 663. Phillip Balk, M.D., an independent medical expert, and Charles M. Cohen, Ph.D., an impartial vocational expert testified. R. 15. ALJ Kenworthy listened to Marbury's prior testimony in front of ALJ Cohen. R. 15. In a decision dated July 2, 2008, ALJ Kenworthy determined that Marbury was not "disabled" within the meaning of the Act because his physical impairments did not prevent him returning to his past relevant work as a cleaner and custodian. R. 21, 39-46.

The Appeals Council denied Marbury's request for review on January 29, 2009, thereby making the ALJ's decision the final decision of the Commissioner. R. 6-8. Marbury commenced the present action on March 10, 2009, seeking judicial review of the Commissioner's decision. Doc. No. 1. Marbury contests the ALJ's finding that his mental health impairment were not severe and does not challenge the ALJ's decision regarding his physical impairments. Doc. No. 11. Therefore, this opinion essentially will focus on Marbury's mental impairments.

### III. STATEMENT OF THE CASE

Marbury was 61 years of age at the time of the hearing before ALJ Kenworthy. R. 106. He completed the tenth grade and is able to read and write English. R. 647. From 1992 until

December 13, 2001, when he took early retirement, Marbury worked as a custodian at a local university. R. 106, 112. The documentary record indicates that Marbury suffers from multiple mental and physical impairments. In his claim for benefits, Marbury submitted evidence of physical impairments including, leg pain, diabetes mellitus, obesity, mild carpal tunnel and hypertension and claimed to be suffering from mental impairments. R. 667-68.

The first record of Marbury's mental health impairment is in Dr. Thomas Painter's treatment notes from November 15, 2002. R. 251. Dr. Painter saw Marbury as his primary care physician at the Veterans Administration. Dr. Painter noted: "I believe he does have an element of anxiety/depression and I plan to treat him with Celexa." R. 251.

The first medical evidence of mental health issues after the alleged onset date is January 10, 2006, when Marbury complained of trouble sleeping and "feeling depressed". R. 161. Dr. Painter wrote on June 20, 2006, that "the patient returned today to follow up on his diabetes, hypertension and with a new complaint of depression. He has been depressed for about two months. He denies any anxiety, but feels general sense of fatigue and difficulty sleeping. . . . This patient is doing generally well today. His lungs are clear. He is interested in psychological counseling for his depression." R. 341-42.

After the June 20, 2006, appointment Dr. Painter referred Marbury to the Western Psychiatric Institute and Clinic ("WPIC"). Marbury initially was evaluated by a social worker at WPIC who noted that he had no past psychiatric history; his cognitive function was intact; his insight was good; and he was cooperative. R. 376. Marbury was assessed with a Global Assessment of Functioning ("GAF") score of 61.[1] R. 376. A score of 61 falls in the "mild symptoms" range, where the individual is "generally functioning pretty well." DSM IV-TR at

---

[1] A global assessment of functioning ("GAF") score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning. The GAF scale ranges from 1 to 100 and measures psychological, social, and occupational functioning on a hypothetical continuum of mental health. The GAF scale is divided into ten ranges of functioning. A GAF rating is within a particular decile if either the symptoms severity or the level of functioning falls within the range. Diagnostic and Statistical Manual of Mental Disorders (DSM IV-TR) 32-34 (4th ed. 2000).

3

34.

On July 27, 2006, Marbury underwent a psychiatric evaluation with WPIC psychiatrist, Edward Friedman, M.D. R. 373. Dr. Friedman noted that Marbury reported feeling depressed and "state[d] he feels helpless. He attributes his problems to his financial situation. He reports he retired too early." *Id.* Following the evaluation, Dr. Friedman diagnosed Marbury with "major depressive disorder; single episode; mild." *Id.*

On October 16, 2006, Marbury met with Philip Buttenfield, a licensed social worker at WPIC. R. 363. Mr. Buttenfield also noted that Marbury's depression stemmed from financial difficulties. *Id.* Mr. Buttenfield noted that Marbury "describe[d] his financial problems as the sole contributing factor to his current depression." R. 365. Marbury expressed that he would attempt to "set some limits on his daughter, who has prevailed upon him to provide day care for her son for the past couple of years, so that he can go out and find some work." R. 362. Marbury was "taken to make an appointment to see a psychiatrist [for] medical evaluation. He will prevail upon his PCP to supply medications in the interim." R. 362.

On November 7, 2006, Marbury saw Dr. Julie Garbutt, a WPIC psychiatrist. R. 356. Dr. Garbutt noted that although Marbury reported a history of depression over the last year, including sad mood, poor sleep, poor energy and concentration, diminished interest and feelings of anxiety or agitation, "he has not had antidepressant therapy previously and no other psychiatric treatment" besides recently beginning therapy at Bellefield Clinic. R. 359. Marbury was diagnosed with major depression, single episode, mild. *Id.* Dr. Garbutt prescribed 100 mg. of Trazodone for sleep issues and 100 mg. of Zoloft for depression. *Id.*

On November 28, 2006, Marbury met with Mr. Buttenfield again and reported improved sleep since beginning medication and that he was "pursuing other gainful employment." R. 355. Later that same day Marbury saw Dr. Garbutt for a medication management checkup. Marbury reported improved sleep without medication side effects, but indicated only minimal improvement in mood. R. 355. After questioning Marbury about his compliance with the prescription, Dr. Garbutt instructed Marbury to increase his Zoloft to 100mg daily, rather than the 50mg he had been taking. R. 356. Dr. Garbutt also noted that Marbury continued to watch his

4

three year old grandson. *Id.* His memory was intact, thought form was logical. Marbury's "cognitive functions appeared to be at baseline and without existing deficits." *Id.* His insight and judgment were good. *Id.* Marbury's GAF score as of October 16, 2006 was 61. R. 358.

Dr. Garbutt saw Marbury again on April 2, 2007, at which time Marbury reported "sustained mood improvement" and that he "thinks he is nearly back to baseline." R. 349. Dr. Garbutt did not change Marbury's medication regimen and noted she intended to follow-up in three months. R. 351.

In a letter also dated April 2, 2007, Dr. Painter wrote, "Mr. Marbury has multiple medical problems including diabetes, poorly controlled hypertension, and most importantly depression and anxiety. He is seeing psychiatrist Dr. Garber (sic) who would be able to explain the disability related to his anxiety and depression but this seems to be the limiting factor in his ability to work." R. 313. Dr. Painter identified Marbury's symptoms as including fatigue; general malaise; extremity pain and numbness; difficulty thinking/concentrating; and psychological problems. R. 314.

Following his April 2, 2007, appointment, Marbury did not return to see Dr. Garbutt until March 10, 2008, at which time he reported good stability of mood and good sleep. R. 499. Dr. Garbutt noted he had been compliant with his medications and was regularly seeing a case manager instead of attending therapy. R. 499.

Marbury began contact with Melissa Carr, the case manager assigned to follow him from WPIC, in January 11, 2008. R. 508. Ms. Carr's case management progress notes include Marbury's verbal reports on his progress. In January 23, 2008, Marbury reported "he was doing well the past month". R. 506. Similar positive reports were taken on February 20, 2008, March 5, 2008 and March 10, 2008. R. 503-505. On March 13, 2008, Marbury reported that he was doing well and "has not taken his psychiatric medication in a couple of months" because they make him feel "loopy". R. 497. Marbury also reported that because he no longer had problems sleeping, he was no longer taking any sleep medication. *Id.* Further positive reports were taken on April 9 and 22, 2008. R. 493, 96.

On March 31, 2006, prior to Marbury's first disability hearing, Edward Jonas, Ph.D., a

5

psychologist for the state-agency reviewed Marbury's records. R. 193. Dr. Jonas concluded that Marbury's mental impairments were "not severe" and documented only "mild" limitations to Marbury's activities of daily living, social functioning and maintaining concentration, persistence, or pace. R. 203. Dr. Jonas noted no episodes of decompensation and no in-patient treatment. R. 205.

At the hearing before ALJ Cohen on June 19, 2007, Marbury testified that he had a problem with depression. R. 648. Marbury stated he had been going to WPIC since July 2006 and was still going as of the date of the hearing. R. 654. There was no other specific testimony regarding mental impairments. R. 644-660. Marbury testified he hadn't watched his grandson for the prior year because "he got a little bit too rough for me." R. 650. Marbury also testified that he looked for several jobs but did not fill out any applications. R. 652-53.

### IV.  STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any

6

'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

7

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained: When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## V. THE ALJ'S DECISION

In his decision, the ALJ determined that Marbury "has not been under a disability within the meaning of the Social Security Act from December 31, 2001 through the date of this decision." R. 16. Marbury was found to have met the insured status requirements of the Act through December 31, 2006. R. 17.

At step one, the ALJ found that Marbury had not engaged in substantial gainful activity since December 31, 2001, the alleged onset date. R. 18. At step two the ALJ found that Marbury had the severe impairments of diabetes mellitus; hypertension; mild carpal tunnel syndrome; and obesity. *Id.* The ALJ found that Marbury's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." R. 19.

In finding that Marbury's mental impairment was "non-severe", the ALJ noted Dr. Garbutt's diagnosis of "major depression, single episode, mild" as well as Marbury's initial GAF score of 61, which indicated only a "mild degree of impairment." *Id*. The ALJ further noted that the state-agency reviewing psychologist determined that Marbury's depression did not have more than minimal limitations. *Id.* Based on this medical evidence, the ALJ concluded that Marbury's depression was "non-severe." R. 19.

The ALJ also considered the evidence of record as it related to the four broad functional areas and found that Marbury had "no more than mild limitations of his activities of daily living, social functioning and ability to maintain attention, concentration and pace. There has never been an episode of decompensation." R. 19. Further, Marbury responded well to medicine and recently told his case manager, Ms. Carr, that he was "feeling mentally stable." R. 19. The ALJ similarly noted that Marbury wanted to and subjectively believed he was able to work. *Id.* Indeed, the ALJ noted that Marbury "admitted to looking into some opportunities for work, thus indicating a subjective belie[f] that he could perform some kinds of work." *Id.*

The ALJ also discussed Dr. Painter's observations in regards to Marbury's mental impairment as expressed in his April 2, 2007 letter. R. 21. The ALJ explained:

> Dr. Painter's opinion appeared to indicate that the most limiting factor was the claimant's psychological impairment. However, Dr. Painter is not a psychiatrist, and he was not treating Mr. Marbury for mental illness. The psychiatric treatment was provided at WPIC. As records from that source have indicated, any mental impairment was mild in nature.

R. 21.

At step three, the ALJ found that none of Marbury's severe physical impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), §404.1525, § 404.1526, § 404.920(d), § 416.929 and § 416.926). R. 19. Marbury's residual functional capacity ("RFC") was found to be simple medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c) except that as of March 26, 2007, Marbury would be further limited to jobs that did not require good sensation and feelings in his hands. R. 19.

The ALJ determined that Marbury is capable of performing his past relevant work as a

9

cleaner and custodian. R. 21. The vocational expert, Dr. Cohen, testified that an individual with the claimant's RFC could perform such relevant work. Specifically, although all jobs "require feeling to some extent, that is certainly not a hallmark of work as a custodian." R. 22. Because the ALJ found Marbury could return to his past relevant work, the ALJ concluded that he has not been under a disability as defined in the Act from the onset date through the date of the decision. (20 C.F.R. § 404.1520(f) and § 416.920(f)).

VI. **DISCUSSION**

A. The ALJ's Finding at Step Two that Marbury's Mental Impairment is "Non-Severe" is Supported by Substantial Evidence

Marbury initially contends that the ALJ erred as a matter of law in finding that his mental health impairment was "non-severe" given "the evidence provided by treating mental health professionals, his primary care physician and the medical expert who testified that his depression causes more than minimal impairment of his ability to engage in consistent work activity." Plaintiff's Brief in Support of Summary Judgment (Doc. No. 11) at 7. Marbury notes that the determination of whether an impairment is severe is a de minimus standard "designed to weed out only the most undeserving claims." *Id.* He highlights *Bowen v. Yuckert*, 482 U.S. 137 (1987), *Newell v. Barnhart*, 347 F.3d 541 (3d Cir. 2003) and Social Security Ruling 85-28, all of which provide that an impairment or combination of impairments is "non-severe" "when medical evidence established only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." S.S.R. 85-28. Given this standard, Marbury argues that the "extensive treatment records of his medical health professionals" clearly demonstrate that he has a "severe" mental health impairment. Doc. No. 11, 9.

The Commissioner argues that the ALJ's decision "easily satisfies the substantial evidence standard" because the evidence does not support Marbury's claims that his mental impairment is severe. Commissioner's Brief in Support of Summary Judgment (Doc. No. 13) at 12. The Commissioner first points to evidence bearing on the four functional areas used to assess the severity of mental impairment under 20 C.F.R. §§ 404.1520a, 416.1520a: Marbury's

10

activities of daily living, which showed he was caring for himself and his young grandson (R. 362); self-reports of being "socially active" and having a "strong martial relationship" (R. 364); energy and concentration within normal limits (R. 373); and no episodes of decompensation. Furthermore, after beginning his medications in November 2006, Marbury repeatedly self-reported to his case manager that he was "doing well." R. 494, 496, 497, 505, 506. The treating physicians notes also contain the following: Dr. Garbutt's February 2007 notation that Marbury's "mood was good"; Marbury's absence of treatment from Dr. Garbutt from April 2, 2007 to March 2008; Marbury was no longer attending therapy; Marbury experienced "good stability of mood and good sleep" (R. 499); Dr. Garbutt's assessment of Marbury's GAF score as 61; and Dr. Painter's deference to Dr. Garbutt as Marbury's treating physician for mental impairments. In addition, the record contained Marbury's self-reports, including testimony at the 2007 hearing before ALJ Cohen, that he was looking forward to returning to work (R. 373-77); Marbury's assessment that financial stresses were "the sole contributing factor to his current depression" (R. 365); and the state reviewing psychiatrist, Dr. Jonas, who concluded that Marbury's mental impairment was "not severe" as there were only "mild" limitations noted no in-patient treatment. Based on the above and the ALJ's thorough discussion of the medical evidence of record, the Commissioner argues that the ALJ gave sufficient consideration to Marbury's mental health impairment and Plaintiff's contention to the contrary must fail.

Although Plaintiff's burden at step two is not a heavy one, the ALJ's determination that Marbury's mental health impairment was not "severe" is supported by substantial evidence. The Regulations define a non-severe impairment as "[a]n impairment or combination of impairments ... [that] does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). While doubts are to be resolved in favor of the plaintiff, the plaintiff bears the burden to show he suffers from a severe impairment. *McCrea v. Barnhart*, 370 F.3d 357 (3d Cir. 2004). To do so Plaintiff must demonstrate something beyond a slight abnormality or a combination of abnormalities which would have no more than a minimal effect on an individual's ability to do work-related activities. *Id.* Therefore, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal

11

effect on the claimant's ability to work. *Newell,* 347 F.3d at 546 (citing SSR 85-28, 1985 WL 56856 at *3). Although there may be contradictory evidence in the record, it is not cause for remand or reversal of the Commissioner's decision if substantial support for the ALJ's determination exists. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

The record shows that the ALJ considered Marbury's complaints of depression and its effect on his ability to work and there is sufficient evidentiary support for the ALJ's omission of the mental impairment from the list of severe impairments. Marbury's DIB period runs through December 31, 2006 (Marbury's date of last insured). R. 656-57. Marbury's SSI period runs through July 2, 2008 (the date of the second ALJ's decision). R. 15-22. The ALJ determined that Marbury's depression was not severe at anytime through the date of the hearing. R. 23.

During the DIB period, the ALJ noted that in November 2006, Marbury began receiving mental health treatment and counseling at WPIC under Dr. Garbutt's general supervision. R. 19. The ALJ specifically noted that Dr. Garbutt, the treating mental health physician, diagnosed Marbury with "major depression, single episode, mild." R. 19. The ALJ also noted the GAF score of 61 indicated a mild degree of limitations.[2] R. 19. The ALJ further noted Dr. Jonas' March 31, 2006, review of the evidence and his conclusion that Marbury's mental health impairment was "not severe". R. 19.

The only evidence Marbury cites for this period is his January 10, 2006, complaint to Dr. Painter of "feeling depressed with trouble sleeping"; Dr. Painter's June 20, 2006, notation that "patient returned . . . . with a new complaint of depression"; his diagnosis of "major depression, single episode, minor"; his medication management check-up with Dr. Garbutt when she prescribed Trazadone for sleep problems and Zoloft for depression; his GAF of 61 and a November 28, 2006, follow-up with Dr. Garbutt in which plaintiff "reported improved sleep

---

[2]Although Marbury references GAF scores of 50 and 60 in his brief and describes their serious and moderate symptoms, a GAF score of 61-70 indicates "some mild symptoms (eg. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (eg. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships." DSM-IVR-TR at 34.

with only minimal improvement in his mood symptoms." Doc. No. 11. None of these demonstrate that Marbury's mental impairments were "something beyond a slight abnormality or a combination of abnormalities which would have no more than a minimal effect on an individual's ability to work." *SSR-85-28*. Therefore, the ALJ's decision that Marbury's mental impairments were non-severe during his DIB period is supported by substantial evidence.

Following the DIB period, the ALJ considered the time period from January 1, 2007, through the date of the hearing and noted the following: Marbury's good response to prescribed medications; the report to his case manager on February 20, 2008, that he was feeling mentally stable; no episodes of decompensation; no more than mild limits in the first three functional areas under 20 C.F.R. § 404.1520a(d)(1) and § 416.920a(d)(1); financial stress as the cause of his mild depression; and Marbury's admission that he looked into work opportunities, indicating a subjective belief that he could perform some kinds of work. R. 19, 21.

This evidence indicated that Marbury's limitations from depression could be controlled with medication provides further support for the ALJ's decision that Marbury's mental impairment was non-severe. The Social Security Act provides that evaluation of mental impairments includes "how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 404.1520a(c). *See Gross v. Heckler*, 785 F.2d 1163, 1165-66 (4th Cir. 1986)("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). As noted by the ALJ, Marbury responded well to medications for both sleep problems and depression. R. 19. On November 7, 2006, Dr. Garbutt prescribed 100 mg of Trazadone for sleep and 100 mg of Zoloft for depression. R. 356. Three weeks later Marbury reported to Mr. Buttenfield that "his sleep ha[d] improved since he started on meds." R. 355. Shortly thereafter, Dr. Garbutt re-checked Marbury's prescriptions and had to remind him to take 100 mg of Zoloft as prescribed, not 50mg as he had been. R. 356. Following this check, Marbury responded well to his medications for both sleep and depression. R. 356, 353, 313. Indeed, the record indicates that Marbury's mental health improved significantly with the ongoing use of prescription medications.

The ALJ also specifically addressed Dr. Painter's April 2, 2007, letter outlining Marbury's treatment. The applicable part of the letter is as follows:

> Mr. Marbury has multiple medical problems including diabetes, poorly controlled hypertension, and most importantly depression and anxiety. He is seeing psychiatrist Dr. Garber (sic) who would be better able to explain the disability related to his anxiety and depression but this seems to be the limiting factor in his ability to work. . . When in stressful situations, his symptoms worsen.

R. 313. Marbury characterizes Dr. Painter as a treating physician in recognition that treating physicians' opinions are to be afforded substantial or even controlling weight. Doc. No. 11, 12-15; *see e.g. Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001)(citing 20 C.F.R. § 404.1527(d)(2)). However, the ALJ correctly noted that Dr. Painter was not treating Marbury for mental illness. R. 21. Indeed, Dr. Painter himself acknowledged that Dr. Garbutt "would be better able to explain the disability related to his anxiety and depression." R. 313. As the ALJ discussed, Dr. Garbutt consistently noted that Marbury's mental impairment was mild in nature. R. 24. The Regulations explain that the more knowledge a treating physician has about the impairment, the more weight the opinion will be given. 20 C.F.R. § 1527(d)(2)(ii). By way of example, "if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for neck pain." *Id.* Just such a situation existed here. Dr. Painter never treated Marbury for mental health issues, but simply noted Marbury's complaints during their appointments.

Furthermore, the ALJ noted that Dr. Painter is not a psychiatrist. R. 21. The Regulations provide that the Commissioner "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(d)(2)(ii)(5), 416.927(d)(2)(ii)(5). *See Mason v. Shalala*, 994 F.2d 1058, 1066-67 (3d Cir. 1993) (where medical opinions conflict, the "opinion of the medical specialist would seem to deserve greater deference."). The ALJ correctly noted that Dr. Painter was neither a mental health specialist nor Marbury's treating physician for mental health issues. Therefore, it was his prerogative to concluded that "substantial weight cannot be

14

attached to Dr. Painter's opinion." R. 21.

Finally, Dr. Painter's assertions that mental health impairments were the primary cause of Marbury's inability to work is undercut sufficiently by the other evidence bearing on the limitations produced by plaintiff's mental health. The ALJ was justified in finding that Dr. Painter's opinion should not be afforded substantial weight as "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.") *See* 20 C.F.R. §§ 404.1527(d)(2)(ii)(4), 416.927(d)(2)(ii)(4); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999) (An ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.). Here, Dr. Painter's assessment is consistently contradicted by every physician who was more familiar with Marbury's mental health history and treatment.

In sum, the ALJ's assessment at step two is consistent with both the medical evidence and other evidence of record. Accordingly, substantive evidence supports the ALJ's exclusion of depression from the list of severe impairments.

      B.      Marbury's Remaining Arguments Depend Upon his Primary Argument that the ALJ Erred in Finding his Mental Health Impairment Non- Severe and Lack Merit

Marbury further contends that the ALJ failed to consider his "excellent work record" when assessing his testimony's credibility and that this error led the ALJ to pose a hypothetical question to the vocational expert which did not accurately portray all of his limitations. Doc. No. 11, 19-23. These arguments are without merit.

It is well-established that when a claimant's subjective testimony of the inability to perform even light or sedentary work is supported by competent medical evidence, the ALJ is required to give great weight to the claimant's testimony. *Schwartz v. Halter*, 134 F.Supp.2d 640, 654 (E.D.Pa. 2001). Indeed, "a claimant is entitled to substantial credibility if he has a work record of continuous employment for a substantial duration of time." *Morrow v. Apfel*, 2001 WL 641038 * 10.

Here, however, the competent medical evidence supports the ALJ's finding that Marbury's mental health impairments had no more than a minimal effect on his ability to work.

15

In addition, the ALJ's decision contains specific reasons for his credibility findings which are supported. R. 15-22. Specifically, the ALJ noted that Marbury expressed misgivings that he retired too early so as to help his daughter's childcare responsibilities and that "this decision ultimately led to some financial stress that resulted in his feelings of mild depression." R. 21. The ALJ also noted that although Marbury stressed his mental impairment's severity, he looked into work opportunities, "indicating a subjective belie[f] that he could perform some kinds of work." *Id.*

Although the ALJ does not specifically mention Marbury's extensive work history in making his credibility determination, work history is but one factor to be considered. *See* 20 C.F.R. § 404.1529(c)(1), 20 C.F.R. § 404.1529(c)(3). The ALJ's credibility determination was supported by the medical evidence and Marbury's own testimony. Accordingly, the ALJ did not err by not specifically discussing Marbury's military and work history.

Marbury's final argument is that the ALJ's "error" in rejecting "medical evidence" and discrediting his testimony led to the ALJ's "failure to pose a hypothetical question to the Vocational Expert which accurately portrayed all of Mr. Marbury's impairments." Doc. No. 11, 23. The VE was asked to consider a person with the ability to perform medium work who could not climb ropes, scaffolds or ladders and did not have the ability to engage in repetitive use of the hands, with no reference to any mental limitations. Doc. No. 11, 23. Therefore, Marbury posits that "as a result of the ALJ's failure to properly assess Mr. Marbury's mental impairments, his RFC finding and hypothetical question are deficient as a matter of law, as each fails to account for any mental health-related limitation." Doc. No. 11, 24.

There is no merit to Marbury's argument. Of course, a "hypothetical question must reflect all of the claimant's impairments that are supported by the record." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Indeed, "the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1987). Where medically undisputed evidence of specific limitations exists and those limitations are not included in the

hypothetical, the VE's response is not considered substantial evidence at step five. *Burns v. Barnhart,* 313 F.3d 113, 123 (3d Cir. 2002). Although the hypothetical question must include all of claimant's physical and mental impairments, the United States Court of Appeals for the Third Circuit does "not require an ALJ to submit to the vocational expert every impairment alleged by the claimant. Rather, the hypothetical posed must accurately portray the claimant's impairments and the expert must be given an opportunity to evaluate those impairments as contained in the record." *Johnson v. Commissioner*, 529 F.3d 198, 206 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (internal quotations omitted).

The ALJ included all of the limitations supported by the evidence, and therefore, the hypothetical question was not legally deficient. As previously noted, a review of the record reveals that the ALJ considered all of the relevant evidence and concluded that Marbury's mental health condition was non-severe. R. 15-22. The ALJ also adequately explained and supported with evidence why he did not fully credit Marbury's complaints of mental health issues. *Id.* Because the ALJ reasonably determined that Marbury's complaints of mental health issues were not fully credible, the ALJ was justified in omitting mental health limitations from the hypothetical. Therefore, the ALJ's determination was supported by substantial evidence.

### VII. CONCLUSION

It is well-settled that disability is not determined by the presence of impairments, but by the effect the impairments have on an individual's ability to perform substantial gainful activity. *Jones v. Sullivan*, 954 F.2d 129 (3d Cir. 1991). In making assessments of the impact impairments have on an individual's ability to do work-related activities, determinations of credibility are committed to the sound discretion of the ALJ and must be upheld where there is substantial evidence to support them. *Hartranft*, 181 F.3d 358, (3d Cir. 1999). Here, the ALJ reasonably concluded that Marbury's asserted mental health impairment was not severe and allegations thereof were not entirely credible in light of all of the record evidence. Therefore, the hypothetical posed by the ALJ was not legally deficient. Accordingly, the ALJ's decision of no disability based on the VE's testimony is supported by substantial evidence.

Thus, Marbury's Motion for Summary Judgment will be denied, Defendant's Motion for

Summary Judgment will be granted and the decision of the Commissioner will be affirmed.

An appropriate order will follow.

Date: August 12, 2010

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc: All counsel of record